Good morning, Faye Arfa on behalf of Jonathan King Appellant. And the Court asked basically four questions, and the answer to all of them is yes. Kelly v. Small is perfectly viable, even after Rynes v. Weber. You mean the Court asked four questions meeting the COA? Yes, yes. I'm sorry. Yes, the Court asked us to address those questions, and the short answer is yes to all of them. Tell me why it matters if Kelly survives in this case. Because at the time of Kelly, we were assuming a different relation back rule. But once you have the male relation back rule, how does Kelly help you? Well, Kelly helps what we like about Kelly is that Kelly gives a different standard other than the good cause standard. Okay. But the disadvantage, of course, as compared to the Rynes approach is that your issue the cases are dismissed and they have to come back. In order to come back, they have to meet the male standard. So you have to meet the male standard. Well, I see what the Court is saying about the amendment. Yes. But not if they're the same issues. Why? Well, because they would automatically relate back under either standard. Why? Well, there would be two standards. Number one, there would be the whether the Respondent has, as a matter of right, you'd be able to amend it once. But if you've already raised these issues in a mixed petition, you can amend it, but that doesn't help, doesn't solve the statute of limitations problem. My understanding is this, and you can tell me why I'm wrong. Okay. That if Kelly applies. Yes. And that this is why Rynes was written the way it was. That if Kelly applied, you would dismiss the non-exhaustive claims. They'd be out. They're gone. In order to come back, they have to be timely when they come back. When they come back, at the time of Kelly, we were assuming that they could always come back because they would relate to the same conviction. You wouldn't have a timeliness problem. But under Mayo, that doesn't do it. So they have to come back and meet the male standard. So why don't you just lose for that reason? Well, isn't it similar, Rynes, as I understand it, Mayo came after Rynes. So it just happens to be fortuitous that Rynes did what it did. I see on Rynes you don't have this problem because the whole thing is pending as it was. It's not dismissed. It's not dismissed, yes. But, well, the way we see it is it's actually the Kelly v. Small is actually a better procedure because the ---- Well, it's a better procedure if you don't have a male problem. Well, but if you've had those claims in the first place, then why would there be a male problem? If you're going to amend the petition to what it originally was, then there really wouldn't be a male problem. It would be the same petition, as in this particular case. It's the same petition. So you raise one ---- you have a mixed petition, and you delete the claims, and then you ---- You're willing to ---- you would have us relate back to the unexhausted claims? Yes, which was the original petition. But how does that fly in the face of Mayo, which makes the point of saying that the claims have to be timely? They're not viable at the time they're originally filed, so they're subject to being And you're asking the Court to put them on hold and treat them as viable later. But that does seem to fly in the face of Mayo. Well, it actually doesn't, because it seems to me that once you have ---- once you file the claims, even though they're not viable, they're still there, and in fact they're ---- Well, that's true under the Rhines procedure. But in this instance, they weren't there. They were dismissed. They're gone. I mean, this is my understanding of the difference between them, and that's why I'm asking you. And that's why I think the whole question of whether Keller survives isn't a very big deal anymore, because it's usually going to run into this problem. Well, the way I ---- the way I saw it is you don't have to ---- the first petition counts as the original petition, even though ---- It doesn't. No, it doesn't, because you've dismissed ---- at the time you're amending, it's not there. Right? You're amending it to a complaint in which these things have been dismissed without prejudice, but dismissed and are not there. Well, but the way we see it is that it's still an original petition. I mean, the original petition, even under 15c, talks about attempted, even if you've attempted to file them, that would be under 15c, which I put in my reply brief. You don't have to actually ---- it doesn't have to actually be there. It just has to be the claims that you wanted to have in the first place. So it has, under 15c, the claim or defense asserted in the amended proceeding arose out of the conduct, et cetera, set forth or attempted to be set forth in the original pleading. So you don't have to have a perfect petition in the first place to come back and later amend it under Kelly v. Small. It doesn't have to be. It's just what you attempted. In other words, if you file a faulty ---- Kagan, but none of that deals with the way your complaint is. It doesn't deal with limitations. Well, then that's the ---- once the Court grants you the ---- but it would still relate back because it would be attempted to be set forth in the original proceeding. You don't have to actually have ---- if I understand the Court's ---- I mean, to me, the most disturbing ---- I mean, there were lots of disturbing things about the fact that many years later we're trying to fix this situation where somebody was obviously trying to do the right thing and just got totally bollocked up in a whole bunch of confusing doctrine. But what about the fact that the ---- is there any ---- what would you have us do about the fact that at the time the complaint was dismissed, it actually was exhausted? Is that before us, that problem? Can we just ---- could we just reverse on the ground that the judge abused his discretion in not granting the motion to reconsider once you told him that it was actually exhausted, or is it too late for that? Well, no. That was actually ---- that was actually the best ground, not to dismiss it. He dismissed the fully exhausted petition. That wasn't raised in the COA, but that's actually what happened. Because ---- and when you look at the timeframe, I mean, they both came down within a matter of seconds. And the only reason it took longer in the State court was because the State court found it meritorious. We had the State supreme court ask for an answer, which delayed everything for about 30 days. But other than that, the claims would have been exhausted. So he really did, and I think that's one of the issues that we wanted, was he really did dismiss a fully exhausted petition. But that was way back when, wasn't it? I mean, the thing ---- what happened since then? Yes. Then you tried to reallege it. What did the court appeal from? That's what I'm trying to figure out. Okay. The court appeal was really from the first ---- he dismissed them all. Even he found that under the motion to reconsideration that what he did was go back and retroactively change his order to say those things were dismissed with prejudice. So you can't ---- they can't be exhausted. Once I dismiss them, they're gone forever. So that's the way he got around it. And on the October 7th, he adopted the magistrate's R&R? The first time ---- it went through twice. The first time was the October 7th. Yes. He sends it back to the magistrate judge, adopts the R&R, and sends it back to deal with what? The one issue, yes. The one issue. Right. And refuses to consider the good cause arguments. That was October 7th, right? Yes. Then on November 2nd, he orders the dismissal of King's, quote, unexhausted claims. Yes. I take it at that point, no one knew that the California Supreme Court had denied review? Well, except according to the ---- if you look at the e-mails, I mean, I knew. I was the counsel, so I knew. So I felt I was home free as soon as the California ---- as soon as I got notice from the California Supreme Court. They came within a matter of really literally minutes. So Judge Walter knew on November 2nd that the California Supreme Court had acted? He wouldn't have known. But I knew because I had gotten notice. So he wasn't getting notice from the California Supreme Court. There was no appearance in front of him that day? No. No. So he really didn't know. So when he was dismissing what he thought were unexhausted claims? Yes. It turns out they were fully exhausted. They were fully exhausted. Did you want to save a little time for rebuttal? Yes, I'd like to save time. Thank you. Thank you for your argument. Okay. Good morning, and may it please the Court. David Glassman, Deputy Attorney General for the Respondent. Good morning. I would like to turn, Judge Berzon, to the latter part of your focus, because it seems to me that that is entirely where the case ---- well, where the focus of the case should be. You wrote in Jackson v. Roe that ---- and obviously you're a lawyer, considering today the extent to which those subsequent cases have modified the Ryan standard. What I would ask the Court to focus on ---- The Kelly standard, is that what you mean? I'm sorry. You mean the Kelly standard? The Kelly standard in light of Ryan's and in light of ---- Okay. But what it seems to me, respectfully, that there was a far more fundamental problem with this case, which renders this case unusual, if not unprecedented. Obviously, all of these rules exist, particularly the interplay of the statute of limitations, which ought to mean something, with the recognition in Ryan's that there are circumstances where the Court would deem it unfair to subject a prisoner, typically a pro se prisoner, to the statute's implications if the circumstances indicate that the petitioner is legitimately proceeding and attempting to navigate through the process. Now, I'd like the Court to look at what was so unusual about this case. The State Supreme Court ---- I'm sorry, the State Appellate Court that rendered a decision in this case on the merits and the direct appeal did so in February of 2004, which meant that from that point forward, this petitioner had 15 months, 15 months to file something in a State Appellate Court if he wanted to raise additional claims that were not presented there. Now, we don't have in that 15-month interim the typical scenario in which the prisoner, who now has no right to counsel, is proceeding pro se. Okay? Fred Jackson was pro se in your earlier case. Overwhelmingly, these prisoners are pro se. This petitioner retained counsel at some point in that process. We don't know exactly when because the document, the explanation from the lawyer doesn't explain when from the current lawyer. He retained the lawyer apparently to pursue collateral post-conviction relief, and ultimately, we are told the lawyer declined to file anything. He then retained this lawyer. So we now have a second retained attorney in a, in a post ---- Where does all this go? It goes to the fact that ---- It goes to the fact that essentially what is filed in the district court is a Federal petition with what are conceded to be nine unexhausted claims in a ten-claim petition at a time when the State's ---- I'm sorry, the AEDPA had not expired. There was time left to file the State petition when instead of filing any petition in State court, this attorney filed ---- If he had filed the State petition, he could ---- he would have ---- the tolling would have bumped back in, and when they were ---- the State was all done, he would have had three days to file his Federal petition. Your Honor, he filed the Federal petition, I believe, two weeks shy of ---- He would have had two weeks to file his Federal petition. He would have had tolling. But conceptually, what I meant by where is this going was conceptually or as a legal theory, where is this going? Is it going to the argument that Kelly doesn't exist or Kelly exists with a good cause provision? And I don't know why you need that, because as I say, isn't there a Mayo problem anyway, a YLE problem? I think my understanding is that before we get to Mayo v. Felix, we still have to have, with respect to the failure to comply with the exhaustion rule, we still have to have something like good cause. And where a ---- where someone comes before the Federal court, represented by counsel ---- But you can see that if you were doing ---- I can't see why the Kelly thing wouldn't survive, although it has a major downside, which is that you're not going to get the automatic relation back. But, Judge Berzin, I would maintain, though, that the first thing, it seems to me, that the Federal judge is asking is where ---- why has the State court been bypassed here? This is ---- Well, why should he ask that? Why shouldn't he say, you want to dismiss your unexhausted claims? Go ahead. You want to come back? We'll see when you come back. I mean, that's just ordinary. Why wouldn't they have the right to do that? Because ---- because most fundamentally, since, for example, Ryans v. Weber is still the most ---- But Ryans is a dispensation. It's saying even though we generally have a rule against mixed petitions, in some instances, we're going to allow it. This is no dispensation. It just says follow ordinary civil procedure and take your, you know, take your chances. So what's the problem? The problem is that I would still maintain that where you have the extraordinary circumstance where there has been a deliberate bypass of the State court ---- Well, then they're going to get in trouble because they're going to come back and it's not going to relate back. So the whole system starts making some sense. Well, but, Your Honor, I would imagine ---- I don't want to talk myself into a hole here ---- where you could have claims that related back, notwithstanding a deliberate bypass. And that's just ordinary, you know, Federal rules of civil procedure. But it seemed to me that ---- You're taking another chance. The case could be gone by then. But the case never would have been gone or didn't ---- there was no need ---- there is no ---- it's not obvious in any way that this case would have been extinguished when, at the time when, I mean, clearly the preference in all these cases, in Ryans, in the ADPA, in all of these, is to start and to complete State litigation. Well, that's the exhaustion requirement. I'm not sure what you're saying beyond the fact that claims have to be exhausted. If the claims were claims that had been raised on direct appeal, they can satisfy the exhaustion requirement that way. There are a lot of claims that can't be, but that would require the Court to look at the substance of the claim and make a decision that it doesn't have really ---- the district court doesn't have reason to make, does it? But I think it's beyond exhaustion, per se, Your Honor, because ultimately the Federal Court is also looking at, with regard to any of these doctrine, whether or not there was a ---- a, again, whether it stated as good cause or something else, whether or not, in what way this was either presented to the State court or how the failure was explained. And in this case ---- Can you tell me why the district court didn't abuse its discretion in not reconsidering his ruling dismissing the petition when it turned out that the petition was actually exhausted at the time he dismissed it? Because I think that at the time that the district court rendered the ---- first of all, if we go back to when the report and recommendation was issued, I mean, that is the operative period of time where there has been the return, the traverse, et cetera. That's where the facts have been established. A ruling is made as of that time, a determination was made as of that time as to whether or not there had been an accounting of the failure to file in State court. The fact that there is ---- because a State petition was, in fact, at some later point filed after this litigation should have been concluded, I mean, there's not the finality of this, it's my understanding, typically, traditionally, is when the matter is submitted to the magistrate judge. But the order from the district court dismissing the unexhausted claims occurred on November 2nd, correct? Correct. Not before? That is ---- I believe that is correct, Your Honor. And if there had been a hearing in front of Judge Walter on November 2nd and he took them, I know there wasn't, it's obviously hypothetical, and he had taken the bench and said, I'm prepared to dismiss the unexhausted claims, what say you, counsel? And counsel had stepped forward and said, they're now exhausted, Your Honor, the Supreme Court has dismissed the claims. What should Judge Walter have done in that circumstance? Well, first of all, to the extent that Judge Walter was not timely notified or more promptly notified ---- It occurred 40 minutes before this hypothetical hearing occurred. The court ---- the lawyer for Petitioner walks in with a fax, says, I'm sorry, Your Honor, but you're about to dismiss claims which, in fact, are fully exhausted. What should Judge Walter have done in that circumstance? Well, two points, Your Honor. First of all, I was ---- I want you to tell me what he should have done in that circumstance. I believe that the judge would not have abused his discretion had he ---- had he concluded that at the time that the matter was litigated in the district court and at a time, for example, that the Petitioner had responded and filed documents with the magistrate, that the state of affairs as they were represented was accurate. Namely, there had been no such timely filing. So he could have said in that circumstance, I don't care what you say, I don't care what the Supreme Court of California has done. In my mind, they're still unexhausted, dismissed. He could have done that? I'm not suggesting that, Your Honor. I'm suggesting that he would have not have abused his discretion had he concluded that there had been no showing that at the relevant period of time, prior to the expiration of the statute, there had been no filing in the State court and no adequate explanation for the bypass of the State court, and that subsequent developments, subsequent events, there's also indication ---- But that's not, in fact, what he did. What he seems to have done is retrospectively characterized the earlier order as having already dismissed the claims with prejudice, but that, of course, isn't what happened. What, in fact, happened is they gave a choice. He said, you either do A or B or I'm going to do C. And the Petitioner chose not to respond, having been told that if they didn't respond, something was going to happen, but they didn't want to make the choice, and that something did eventually happen, but that isn't to say that it was dismissed earlier, which is what he tried to say later on. But it is also true, as you point out, Judge Berzon, that there were, and I don't have that page of the order open in front of me, there were directives from the court as to make elections, and those were ignored. And, again, this is a case of ---- But they were conditional. I mean, you choose A or B or I'm going to do C. But not only is the Petitioner on notice of that, but in a situation where the Petitioner has counsel. I mean, I believe that is a fundamental part of this case. I mean, you try and characterize this in your brief as a Rule 41C dismissal for as a sanction, but he never said that. And I'm, I don't need to pursue the argument that was made in the brief, Your Honor. The point I'll leave the Court with, because I realize my time is running short. You're actually about a minute and a half over your time, so please finish your response to the question. Thank you. Is that there was absolutely no explanation for an attempt to, as I say, to completely ignore what should be the primary State proceedings to come directly to the Court. Both the magistrate and the district court recognized that, and it seems to me that there was no abuse of discretion in finding that under those circumstances there was no good cause. Thank you. Thank you for your argument. Rebuttal? Yes. Thank you. Yes. What Respondent is basically saying is, look, don't come to the district court unless you're totally exhausted. That's basically what they're saying, is that everything should have been filed first in State court. But that's not what the, that's not what Ryan says, and that's not what Kelly v. Small says. You can come with an expetition, and there are alternatives. There are things that you can do, you can choose. Okay. We chose to come to the Federal court in light of the short amount of time. And it, it also doesn't seem fair under equal protection that somebody who doesn't have an attorney gets more latitude than somebody who does get an attorney, especially when the mother comes in 14 days, she saved all her money, and comes in and hires an attorney at the last minute. The client doesn't know. I mean, they're just trying to get their money together to hire an attorney. That's why they come in. They don't realize how much work there is. So the mother comes in and says, you know, will you help my son? And then we took payments and did as much as we could. Kagan. Is this whole issue about the judge's refusal to reconsider once he understood that there was exhaustion before us, I know it's not within the COAs. Yes. Did you ask for a COA in that question? Did you try to appeal that issue? Oh, I, I, we, we did. I don't believe we took any sort of interlocutory appeal, but that was our petition. It was, I mean, it was our petition. If you look in, in all the briefing that we did, we just. But not here. You never tried to, you never, ordinarily, if you're going to brief, if you have an, an un, if you have an uncertified question, you're supposed to brief it. You didn't really brief it. You sort of briefed it. I mean, you mentioned it. I'm just trying to figure out, I mean, that issue is. Well, I'm ready to, if the Court wants additional briefing, we'll brief it. That was one. I believe that was. No, the point is that if the district court fails or refuses to certify an issue that you think is important to your client's freedom, that's what habeas is all about. Yes. Then you put it in your brief because under our rules, that becomes a motion to this panel to expand the certificate.  And, and maybe that's the learning point. Thank you for your argument. The case just argued will be submitted for decision. We'll proceed to the next case on the calendar, which is Ford against. Is Pyler the warden these days or Hubbard?
judges: Hawkins, Berzon, Clifton